UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN FLORO,<br>    Plaintiff,<br><br>v.<br><br>METABOLIFE INTERNATIONAL, INC.,<br>WALGREEN CO., AND WALGREEN<br>EASTERN CO., INC.,<br>    Defendants. | )<br>)<br>)<br>)<br>)  DOCKET NO: 05CV10048-REK<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF MICHAEL J. RACETTE

I, Michael J. Racette, being duly sworn, hereby deposes and say:

1.      I am an attorney at law, with offices located at 250 Summer Street, Boston, Massachusetts 02210.  I am duly licensed to practice law and am in good standing in the Commonwealth of Massachusetts.

2.      I am attorney for the Defendants in the above-captioned action.

3.      I am personally familiar with the fact that numerous federal lawsuits around the country involving allegations of harm due to the use of ephedra products have been consolidated for the pre-trial proceedings in the matter entitled, <u>In Re: Ephedra Products Liability Litigation,</u> Docket 04 MD 1598 in the United States District Court (S.D.N.Y.).  I am counsel for Metabolife International, Inc. in one of the cases that was transferred into the MDL proceedings.  The name of that case is <u>George Winsor, Executor of the Estate of Mary P. Winsor v. Metabolife, et al.</u>  It originated in the United States District Court of Massachusetts, and bears the Docket No. 02-10387JLT.  This case was transferred to the United States District Court (S.D.N.Y.) for pre-trial proceedings in that MDL action.

4.      The Defendant, Metabolife International, Inc., is a party to that MDL proceeding, due to having been named as a defendant in cases in which a plaintiff claims to have suffered personal injuries of the same or similar nature that the Plaintiff alleges in the present case, after ingesting the Metabolife 356 product.

5.      In the MDL proceeding, Metabolife has filed a motion seeking to disqualify the plaintiff's proposed expert witnesses, on Daubert grounds.  Since January 10, 2005, Judge Rakoff has been presiding over numerous days of expert testimony on this very subject matter, and the Daubert hearings are scheduled to continue into February.

6.      According to the Middlesex Superior Court docket, on September 16, 2004--one week before the statute of limitations expired--the Plaintiff, filed a Complaint against the Defendants, Metabolife International, Inc. and Walgreen Co., in the Middlesex (Massachusetts) Superior Court, which action the Middlesex Superior Court was assigned Civil Action No. 2004-03651-B.

7.      According to the Middlesex Superior Court docket, on the very last day (December 10, 2004) permitted under the Tracking order issued by the Middlesex Superior Court, the Plaintiff filed an Amended Complaint, adding as a party defendant, Walgreen Eastern Co., Inc.

8.      According to the Middlesex Superior Court docket, on that same date (which was five days before the ninety-day deadline under Mass. R. Civ. P. 4(j) for serving the summons and complaint on the defendants[1]), the Plaintiff finally served the summons and Amended Complaint on the Defendants.  As a consequence, the original Answer deadline was December 30, 2004.

---

[1] Rule 4(j) of the Mass. R. Civ. P. requires a plaintiff to effect service of process on the defendants within 90 days from the filing of the complaint.

9. On December 29, 2004, I called the Plaintiff's attorney, Paul Mastricola, and requested an enlargement of the original December 30 Answer deadline by two-weeks, to Friday, January 21, 2005. Mr. Mastricola agreed to this enlargement. Subsequently, I timely filed the papers necessary to remove the case to this Court pursuant to 28 U.S.C. § 1446(a). This removal did not affect the Answer deadline.

10. On Friday, January 21, 2005, I had two telephone conversations with the Plaintiffs' counsel, Paul Mastricola. In the first conversation, I asked for information about the product pill bottle label, because I had just that day learned from his client that this information would help determine the identity of the manufacturer of that particular lot of product, and might effect the content of the Defendants' Answers to the Amended Complaint. The Plaintiff's attorney replied, that he thought that the Plaintiff no longer had the pill bottle, but he would endeavor to find this information out. I asked, "if I get you the Answers on Monday, is that okay?" The Plaintiff's counsel immediately replied in the affirmative.

11. Later that day, the Plaintiff's attorney called me back and informed me that, after checking, he learned that, in fact, the Plaintiff no longer had the pill bottle. I then stated that I would nonetheless like more time to consult with my clients, to determine if the Defendants might be able to determine more information about the possible manufacturing history. I further stated that I thought that I might not be able to obtain any more information about that issue by Monday, and I said that I would like to look into it more "next week," to see if the final content of the Defendants' Answers should be affected. I further stated in this second conversation, that, "perhaps" if I did not have any further insight into that issue by Tuesday (i.e., January 25, 2005), I would just file the Answers based upon the information known as of that time. The Plaintiff's counsel indicated that this was agreeable to him.

12.    At this point (late Friday, January 21, 2005), I expected to file the Answers at some point during the week of January 24-28. Based upon the casual and courteous nature of my prior discussions with Plaintiff's counsel, wherein the Plaintiffs' attorney had not mentioned any need to receive the Answers by a particular date, and given the fact that the end of the week (i.e., January 28, 2005) would only amount to a four-week extension of the original Answer deadline, and in light of the fact that I believed that the filing of the Answers by the end of the week (as opposed to at any point earlier in the week) would not result in any advantage to the Defendants or prejudice to the Plaintiff in this litigation, and in light of my fifteen years of experience (both as plaintiff counsel and defense counsel) in dealing with opposing counsel on matters of minor professional courtesies such as this, I believed that the Plaintiff's attorney had agreed to an enlargement to the end of the week, even though he hoped to have them earlier, rather than later, in the week.

13.    On Tuesday, January 25, 2005, the Plaintiff's counsel called me and asked about the status of the Answers. I replied, that I had been snowed out of the office on Monday, due to the weekend blizzard, and therefore had not made the final determination on the Answers, and that I would file the Answers the following day. Despite this statement, I continued to believe that the Plaintiff's attorney had agreed to an enlargement to the end of the week.

14.    Subsequently, I realized that I would be out of-the-office for the entire day on the following day, in conjunction with a deposition in Framingham, Massachusetts, in another matter. I did not call the Plaintiff's attorney, however, because I continued to believe that he had granted an enlargement until the end of the week, and that it was of no real consequence, whether the Answers were filed on Wednesday as opposed to two days later. In retrospect, it is obvious that the Plaintiff's did not believe that he had done so. I accept the blame for this

misunderstanding, which was due to the lack of clarity in the words I used in my last two discussions with the Plaintiff's counsel.

15.    The following day (Thursday), after attending a client meeting in another matter that lasted from 10:00 a.m. to 2:45 p.m., I got further information from one of the Defendants, which affected the responses to the Plaintiff's Amended Complaint, and I revised the draft Answers to the Amended Complaint, to be ready for filing the next day.

16.    Upon arrival the next morning (i.e., Friday, January 28), the Defendants' counsel received a copy of the Plaintiff's Request. The Defendants' counsel immediately called the Plaintiff's counsel and expressed surprise at the Plaintiff's Request, and asked him if he would assent to the filing of the Answers that day. The Plaintiff's counsel said he would check. A few minutes later, he called back, and said that he would not assent to this. When asked, several times, what prejudice he thought the Plaintiff would suffer by the filing of the Answers two days later than he said, in his Request, he had agreed to, he did not cite any prejudice. Instead, he said that deadlines would be meaningless, and words to the effect that "rules are rules."

17.    Instead of finalizing and filing the Defendants' Answers on Friday, January 28, 2005, as I had planned, I devoted substantially the whole day to researching the applicable law and drafting this affidavit, and the motion and memorandum submitted herewith.  Had the Plaintiff's attorney assented to the filing of the answers on Friday, January 28, 2005) (which he refused to do, I would have filed the Answers on Friday, January 28, 2005.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 31st DAY OF JANUARY 2005.**

_____
Michael J. Racette