# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

Michael J. Racette
Phone: 617-737-8823
Fax: 617-342-4917
mracette@morrisonmahoney.com

February 2, 2005

Civil Clerk's Office
United States District Court
One Courthouse Way
Boston, MA 02110

Re:    Floro v. Metabolife International, Inc., et al.
       Docket No. 05CV10048-REK
       Our File No. 10017066

Dear Sir/Madam:

Enclosed for filing and docketing in the above-reference matter, please find the original certified docket pages from the Middlesex Superior Court.

Very truly yours,

Michael J. Racette

MJR:caj
Enclosures

cc:    Robert J. O'Regan, Esq./Paul Mastricola, Esq.
       Nicholas P. Alexander, Esq.

BOSTON ● NEW YORK ● LONDON

MICV2004-03651

LAUREN FLORO

v.

METABOLIFE INTERNATIONAL, INC, ET AL

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-03651

I, Patricia A. McCann, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 16th of Sept., in the year of our Lord, Two Thousand Four



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 12th of Jan., in the year of our Lord, Two Thousand Five

Deputy Assistant Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAUREN FLORO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DOCKET NO: 05CV148-REK |
| | ) | #04-3651 |
| | ) | |
| METABOLIFE INTERNATIONAL, INC., | ) | |
| WALGREEN CO., AND WALGREEN | ) | |
| EASTERN CO., INC., | ) | |
| Defendants. | ) | |
| | ) | |

NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
28 U.S.C. §1441(a)

## TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:

**A.    INTRODUCTION**

Pursuant to 28 U.S.C. § 1446(a), the Petitioners/Defendants, Metabolife International, Inc., Walgreen Co., and Walgreen Eastern Co., Inc. (collectively, "Defendants"), hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332 and 1441(a) and state the following grounds for removal:

1.    On September 16, 2004, the Plaintiff, Lauren Floro, filed an action entitled, Lauren Floro v. Metabolife International, Inc., Walgreen Co., and Walgreen Eastern Co., Inc., against the Defendants, Metabolife International, Inc. and Walgreen Co., in the Middlesex (Massachusetts) Superior Court, which action the Middlesex Superior Court assigned Civil Action No. 2004-03651-B.   On December 10, 2004, the Plaintiff, Lauren Floro, filed an Amended Complaint, adding the Defendant, Walgreen Eastern Co., Inc., as a party Defendant.

1

**B.    GROUNDS FOR REMOVAL**

1.    Jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1441 because this action could originally have been filed in this Court pursuant to 28 U.S.C. § 1332(a)(1) on the basis that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

  a.    Plaintiff, Lauren Floro, based on her Complaint, is an individual, residing at 18 Fernglade Road, Burlington, Massachusetts.

  b.    Defendant, Metabolife International, Inc., is a California corporation with a principal place of business at 5643 Copley Drive, San Diego, California.

  c.    Defendant, Walgreen Co., is an Illinois corporation with a principal place of business at 200 Wilmot Road, Deerfield, Illinois.

  d.    Defendant, Walgreen Eastern Co., Inc., is a New York corporation with a principal place of business at 200 Wilmot Road, Deerfield, Illinois.

**C.    AMOUNT IN CONTROVERSY EXCEEDS $75,000**

Based on the claims asserted in the Complaint and as filed by the Plaintiff in the Civil Action Cover Sheet, the amount in controversy exceeds $75,000.  A copy of the Civil Action Cover Sheet is attached as Exhibit "C." In that Civil Action Cover sheet, the Plaintiff asserts that her claimed damages in this matter include a stroke which resulted in permanent injuries, and hospitals costs estimated to be in the amount of $20,000.

**D.    CONSENT OF ALL DEFENDANTS**

All Defendants consent to removing this action to this Court.

**E.    VENUE ALLEGATIONS**

Pursuant to 28 U.S.C. § 106 and § 1446(a) and (b), the state court action which was commenced in the Middlesex Superior Court, may be removed to this Federal District Court which embraces Middlesex County.

**F.    CERTIFIED COPIES OF RECORDS OF STATE COURT PROCEEDING**

Pursuant to Local Rule 81.1(a), the Defendants have requested of the Clerk of the Superior Court of Massachusetts, County of Middlesex, certified or attested copies of all docket entries therein, and the Defendants will file the same with this Court within thirty (30) days after the filing of the Notice of Removal.

WHEREFORE, the removing Defendants, Metabolife International, Inc., Walgreen Co., and Walgreen Eastern Co., Inc., request that the action pending in Middlesex County, be removed therefrom to this Court and proceed as an action properly removed to this Court.

Respectfully Submitted,

METABOLIFE INTERNATIONAL, INC.,
WALGREEN CO., and
WALGREEN EASTERN CO., INC.,
Defendants,
By Their Attorneys,

Nicholas P. Alexander, Esq. (BBO# 544173)
Michael J. Racette, Esq. (BBO No. 555350)
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210
(617) 439-7500

I hereby certify that this document has been served upon all counsel of record in compliance with the F.R.C.P. *m 1/6/05*

4

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-3651

................................... , ss
MIDDLESEX
[seal]

LAUREN FLORO ..................................... , Plaintiff(s)

v.

METABOLIFE, INTERNATIONAL
WALGREEN CO. ................................... , Defendant(s)

## SUMMONS

To the above-named Defendant:    **Metabolife International, Inc.**

You are hereby summoned and required to serve upon ...**Robert J. O'Regan, Esq.**......................

**Burns & Levinson LLP** .................... plaintiff's attorney, whose address is ...**125 Summer Street**

**Boston, MA   02110** ....................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .**Middlesex County**....

.**Superior Court**................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at .**40 Thorndike St., Cambridge, MA   02141**........

the ..............**17th**.............................. day of ..........**September**.....................................

......................, in the year of our Lord ........**2004**................................. .

*Edward J. Sullivan*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

CIVIL ACTION NO: _____

```
                                )
LAUREN FLORO,                   )
                                )
              Plaintiff,        )
                                )
v.                              )          COMPLAINT
                                )
METABOLIFE INTERNATIONAL INC.,  )
and                             )
WALGREEN CO.,                   )
                                )
              Defendants.       )
                                )
```

## INTRODUCTION

This is an action to recover damages for personal injuries sustained by Plaintiff Lauren Floro as the result of purchasing and ingesting Metabolife 356, a supplement manufactured by Defendant Metabolife International, Inc. and sold by Defendant Walgreen Co., which caused Ms. Floro, at age twenty-one, to suffer a stroke and to thereby sustain serious and permanent injuries.

## PARTIES

1.      Plaintiff Lauren Floro ("Ms. Floro") resides at 18 Fernglade Road, Burlington, Massachusetts.

2.      Defendant Metabolife International, Inc. ("Metabolife") is a privately-owned California corporation with a principal place of business at 5643 Copley Drive, San Diego, California.

3.      Defendant Walgreen Co. ("Walgreens") is a public company incorporated in Illinois with a with corporate headquarters at 200 Wilmot Road, Deerfield, Illinois.  Walgreens

has 4,480 store locations in forty-four states and Puerto Rico, including a store located at 15 Main Street, Waltham, Massachusetts.

## JURISDICTION AND VENUE

4.     The claims set forth in this Complaint are within the general jurisdiction of the Superior Court.  This Court has personal jurisdiction over Metabolife pursuant to Massachusetts General Laws c. 223A, § 3, the Massachusetts Long-Arm Statute.  This Court has personal jurisdiction over Walgreens because the store at which Ms. Floro purchased Metabolife 356 is located in Waltham, Massachusetts.  Venue is proper in Middlesex County pursuant to Massachusetts General Laws c. 223, § 1 because Ms. Floro is a resident of Middlesex County.

## FACTS

5.     In or about July 2001, Ms. Floro purchased Metabolife 356 from the Walgreens store located at 15 Main Street, Waltham, Massachusetts.

6.     Metabolife 356 is a dietary supplement containing ephedra that was manufactured by Metabolife.

7.     The product label for Metabolife 356 recommended that adults take one to two caplets two to three times per day, or every four hours, not to exceed eight caplets per day.  The label also recommended that consumers should not use the product for more than twelve weeks, and that exceeding the recommended amount may cause serious adverse effects, including heart attack or stroke.  Other possible side effects mentioned on the label include rapid heartbeat, dizziness, severe headache, and shortness of breath.

8.     Ms. Floro ingested Metabolife 356 as instructed by the label affixed to the bottle for a period of less than twelve weeks.

2

9.    On or about September 23, 2001, Ms. Floro ingested Metabolife 356, again in a manner consistent with Metabolife's instructions. She took two pills in the morning and two pills in the evening, as directed by the product label. Later that day, Ms. Floro suffered a stroke. At the time of her stroke, Ms. Floro was twenty-one years old. In connection with that stroke, Ms. Floro has suffered significant personal injuries, as a result of taking Metabolife's ephedra-containing product Metabolife 356.

10.    At all relevant times Metabolife did research, develop, manufacture, create, design, test, label, package, distribute, supply, market, sell, promote, and/or advertise ephedra-containing Metabolife 356. At all relevant times Walgreens did sell, promote, and/or advertise ephedra-containing Metabolife 356.

### CHRONOLOGY

11.    In 1994, ephedra-containing dietary supplements were sold over-the-counter worldwide, with little oversight by the U.S. Food and Drug Administration ("FDA"). Under the Dietary Supplement Health and Education Act of 1994, dietary supplements are generally marketed without prior FDA review of their safety and effectiveness; manufacturers of dietary supplements are responsible for ensuring the safety of the dietary supplements they sell. Therefore, the FDA relies on the voluntary reports of adverse events from consumers, health professionals, and the manufacturers themselves in its effort to oversee the safety of dietary supplements.

12.    In or about June, 2002, the FDA requested that the U.S. Department of Justice pursue a criminal investigation of Metabolife's conduct involving its product Metabolife 356. Specifically, the FDA and Department of Justice officials have accused Metabolife of making false statements of fact regarding the safety of Metabolife 356. At issue is a 1998 statement by

3

Metabolife's President Michael Ellis to the FDA that Metabolife had "never received one notice from a consumer that any serious adverse health event has occurred because of the ingestion of Metabolife 356."

13.    In or about August, 2002, the U.S. Justice Department began conducting criminal investigations into the safety and effects of dietary supplements containing ephedra.

14.    In or about March, 2003, the U.S. General Accounting Office ("GAO") issued a report reviewing the records of Metabolife regarding health-related calls it received from users of Metabolife's product, Metabolife 356. The GAO's review found 14,684 call records that contained reports that contained at least one adverse event. The GAO also found that reports of serious adverse effects had been made to Metabolife, including heart attack, stroke, seizure, cardiac arrest, and death. The GAO counted 96 such reports collected from consumers between May, 1997 through July, 2002.

15.    The GAO also found that Metabolife had received reports of significantly elevated blood pressure, abnormal rhythm, loss of consciousness, and systemic rash, but the incomplete nature of Metabolife's own records did not allow the GAO to conclude that the adverse events reported were caused by Metabolife 356.

16.    In May, 2003, Illinois became the first state to ban the use of dietary supplements containing ephedra. California later followed in October, 2003, and New York also banned ephedra in November, 2003.

17.    As of September 27, 2002, the FDA had received approximately 1,800 adverse event reports regarding consumers of dietary supplements containing ephedra. Of these reports, 322 specifically concerned Metabolife's product, Metabolife 356.

4

18.    In or about June, 2003, Metabolife agreed to produce to the FDA 13,000 reports from consumers concerning health-related concerns linked to Metabolife 356.

19.    On December 30, 2003, the FDA finally announced a nationwide ban of ephedra, due to evidence that products containing ephedra are not safe for human consumption and can cause serious adverse health effects.

20.    On April 12, 2004, the FDA ban became effective, making it illegal to sell products containing ephedra, such as Metabolife 356.

## HARMFUL EFFECTS OF EPHEDRA

21.    Dietary supplements containing ephedra, including Metabolife's product, Metabolife 356, have been linked to substantial increases in blood pressure, heart rate, and arrhythmia, as well as other effects simulating amphetamine, such as nervousness, hyperactivity, increased energy, anxiety, increased insomnia, tremor, and dry mouth.

22.    Dietary supplements containing ephedra have also been found to stimulate the central nervous system and to cause intracranial hemorrhage, hypertension, palpitations, tachycardia, arrhythmias, dysrhythmias, myocardial infarctions, seizures, strokes, tremors, psychosis, nervousness, headaches, vertigo, gastrointestinal distress, and even death.

## DEFENDANTS' WRONGFUL CONDUCT

23.    The facts set forth in Paragraphs 21 and 22 herein were not disclosed on the product label of Metabolife 356.

24.    Pursuant to the Dietary and Supplement Health and Education Act of 1994, manufacturers of dietary supplements are responsible to ensure the safety and integrity of their products, including products containing ephedra, such as Metabolife 356.

25. Defendant Metabolife engaged in a diverse and wide-sweeping marketing and promotional campaign to sell Metabolife 356, during which it misinformed and misled Ms. Floro about the adverse health effects of its product. Metabolife and Walgreens failed to protect Ms. Floro and other users from the serious dangers of Metabolife 356, which Metabolife and Walgreens knew or should have known resulted from its ingredient ephedra.

26. Metabolife and Walgreens' efforts to promote Metabolife 356 included, but were not limited to, claims that Metabolife 356 would allow consumers, including Ms. Floro, to stimulate fat loss, preserve lean muscle mass, increase energy, and increase metabolism.

27. Metabolife failed to formulate, manufacture, design, and compound Metabolife 356 so as not to constitute an unreasonable risk of death, intracranial hemorrhage, heart attack, seizure, or stroke.

28. The warning label for Metabolife 356 failed to adequately warn of the inherent dangers and risks it carried, and also failed to warn with an intensity commensurate with the existent danger. Metabolife and Walgreens failed to warn Ms. Floro and other over-the-counter consumers of the risks associated with Metabolife 356, including death, intracranial hemorrhage, heart attack, stroke, seizure, and psychosis.

## CLAIMS FOR RELIEF

### COUNT I VS. METABOLIFE AND WALGREENS
### STRICT LIABILITY

29. Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 28 as if set forth in full.

30. Metabolife and Walgreens are strictly liable to Ms. Floro as follows:

31. Metabolife was engaged in the business of manufacturing, promoting, marketing, advertising, distributing, supplying, and selling Metabolife 356, which contains ephedra.

6

Walgreens was engaged in the business of promoting, marketing, advertising, distributing, supplying and selling Metabolife 356. Metabolife and Walgreens sold and distributed Metabolife 356 to Ms. Floro in the Commonwealth of Massachusetts.

32.    Ms. Floro was using Metabolife 356, as instructed by the product label, in a manner for which it was intended, or in a reasonably foreseeable manner.

33.    Metabolife 356 was expected to and did reach the Ms. Floro without substantial change in its condition as manufactured by Metabolife and sold by Metabolife and Walgreens.

34.    Metabolife and Walgreens knew or should have known that the foreseeable risks associated with Metabolife 356 as manufactured and/or distributed by them exceeded any of its potential benefits.

35.    Ms. Floro was not aware and could not have reasonably discovered the dangerous nature of the Metabolife 356 that she purchased from Metabolife and Walgreens.

36.    The Metabolife 356 manufactured and/or distributed by Metabolife and Walgreens caused or subjected Ms. Floro to suffer a stroke upon her consumption of it and therefore constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the misrepresentations of Metabolife and Walgreens and their failure to disclose adequate facts to Ms. Floro.

37.    As a direct and proximate result of Metabolife's design and manufacture, and Metabolife and Walgreens' promotion and sale of Metabolife 356, Ms. Floro (a) suffered serious and grievous personal injuries; (b) incurred economic loss, including the loss of earnings and loss of earning capacity; and (c) was required to expend fair and reasonable expenses for necessary health care, attention, and services.

38.    Therefore, Metabolife and Walgreens are strictly liable to Ms. Floro.

## COUNT II VS. METABOLIFE AND WALGREENS
## NEGLIGENCE

39.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 38 as if set forth in full.

40.    It was the duty of Metabolife and Walgreens to use reasonable care in the manufacture, promotion, marketing, advertising, distribution and sale of Metabolife 356.

41.    Contrary to its duty, Metabolife and Walgreens committed one or more of the following careless and negligent acts and/or omissions, in that Metabolife and Walgreens:

    a.    Failed to adequately and properly test and inspect Metabolife 356 so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

    b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of Metabolife 356;

    c.    Failed to manufacture Metabolife 356 in a reasonable and safe condition for which it was intended;

    d.    Failed to adequately and properly warn Ms. Floro of the risk of adverse side effects when Metabolife 356 was used in the manner for which it was intended;

    e.    Failed to adequately and properly label Metabolife 356 so as to warn the Ms. Floro of the risk of adverse side effects;

    f.    Manufactured Metabolife 356, which constituted a hazard to health;

    g.    Manufactured Metabolife 356, which caused adverse side effects;

    h.    Were otherwise careless and negligent.

42.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe injuries.

8

## COUNT III VS. METABOLIFE AND WALGREENS
## VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT M.G.L. CHAPTER 93A

43.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 42 as if set forth in full.

44.    Metabolife and Walgreens engaged in unfair competition or unfair or deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Massachusetts General Laws c. 93A, when they:

a.    Through advertising, warranties, and other express representations, falsely represented that Metabolife 356 had benefits or characteristics that it did not actually have;

b.    Falsely represented that Metabolife 356 was of a particular standard or quality when it was not;

c.    Concealed and suppressed facts material to the true characteristics, standards, and quality of Metabolife 356 in its advertising.

45.    Metabolife and Walgreens are and have been at all relevant times "persons engaged in trade or commerce" within the meaning of Massachusetts General Laws c. 93A.

46.    Metabolife and Walgreens' unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

47.    Metabolife and Walgreens' deceptive practices were specifically designed to induce the Ms. Floro to buy and to use Metabolife 356.

48.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

9

49.    Ms. Floro is entitled to recover up to three (3) times the amount of her actual damages, together with attorneys' fees and costs, pursuant to Massachusetts General Laws c. 93A.

## COUNT IV VS. METABOLIFE AND WALGREENS
## BREACH OF EXPRESS WARRANTY

50.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 49 as if set forth in full.

51.    Metabolife and Walgreens expressly warranted to Ms. Floro, by and through statements made by them or by their authorized agents or sales representatives, orally, in publications, on bottles of its product, and in other written materials, that the Metabolife 356 which Metabolife manufactured, and which Metabolife and Walgreens promoted, marketed, advertised, distributed and sold to Ms. Floro was of merchantable quality and fit, and was safe for human use and otherwise not injurious to Ms. Floro's health and well-being.

52.    Ms. Floro reasonably relied upon Metabolife and Walgreens' guarantees and express warranties when she purchased and used Metabolife 356.

53.    The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit for human use, and otherwise injurious to Ms. Floro, notwithstanding Metabolife and Walgreens' guarantees and express warranties.

54.    Metabolife and Walgreens breached their express warranty in that Metabolife 356 was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms. Floro's health and well-being.

55.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT V VS. METABOLIFE AND WALGREENS
### BREACH OF IMPLIED WARRANTY

56.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 55 as if set forth in full.

57.    Metabolife and Walgreens impliedly warranted to Ms. Floro that Metabolife 356 was of merchantable quality and fit, and was safe for human use and otherwise not injurious to Ms. Floro's health and well-being.

58.    Ms. Floro, in reasonable reliance upon the guarantees and implied warranties of Metabolife and Walgreens, purchased and used Metabolife 356.

59.    The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit for human use and otherwise injurious to Ms. Floro, notwithstanding the guarantees and implied warranties of Metabolife and Walgreens.

60.    Metabolife and Walgreens breached their implied warranties in that Metabolife 356 was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms. Floro's health and well-being.

61.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT VI VS. METABOLIFE
### NEGLIGENT MISREPRESENTATION

62.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 61 as if set forth in full.

63.    In continuing to sell and distribute Metabolife 356 for use by Ms. Floro while failing to warn Ms. Floro of the dangers of using dietary supplements containing ephedra, after Metabolife learned or should have learned of these dangers, Metabolife negligently

11

misrepresented that Metabolife 356 was fit for use, merchantable, and reasonably safe for its intended purpose.

64.    The representations and omissions of material fact by Metabolife were in fact false. The true facts, which Metabolife failed to disclose and/or falsified to the public and to the FDA, were that Metabolife 356 could cause severe medical problems to consumers, including Ms. Floro.

65.    When Metabolife made these representations and omissions of material fact, it knew or should have known that the representations were false, that the omissions of material fact were misleading, and that the misrepresentations were made with no reasonable ground for believing them to be true.

66.    The representations and omissions of material fact were made by Metabolife with the intent to deceive the Ms. Floro, the general public, and the FDA, with intent to induce them to use Metabolife 356.

67.    At the time the aforesaid representations and omissions of material fact were made, Metabolife concealed from Ms. Floro, the general public, and the FDA, its lack of adequate testing and research and its lack of information about the safety of Metabolife 356.

68.    At the time these representations and omissions of material fact were made by Metabolife , and at the time Ms. Floro used Metabolife 356, Ms. Floro was reasonably unaware of the falsity of Metabolife's representations, and Ms. Floro reasonably believed that Metabolife 356 was safe as warranted by Metabolife and Walgreens.

69.    Ms. Floro reasonably relied upon such misrepresentations, either directly or indirectly, and was induced to and did use Metabolife 356.

70.    Had Ms. Floro known of the actual facts, which Metabolife failed to disclose, she would not have used Metabolife 356.

71.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT VII VS. METABOLIFE
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT

72.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 71 as if set forth in full.

73.    Metabolife made false statements, intentionally committed fraud, and conspired to hide the truth regarding the safety, expected and known complications and other material information regarding Metabolife 356.

74.    Metabolife knowingly and purposely made false and fraudulent representations, directly or indirectly to Ms. Floro, including but not limited to, that (a) Metabolife 356 was fit for its intended purpose, (b) that Metabolife 356 had been adequately and reliably tested when it had not, and (c) that Metabolife 356 was safe and appropriate for use by human beings.

75.    Metabolife possesses or possessed scientific data to demonstrate that the Metabolife 356 which it manufactured, promoted, marketed, advertised, distributed and sold was linked to serious illnesses and medical complications.

76.    Metabolife intentionally and/or recklessly hid this information or misrepresented this information to federal regulatory agencies, including the FDA, and the public at large.

77.    Metabolife knew or was reckless in not knowing the falsity of these representations.

78.    This information was material to Ms. Floro's decision to use Metabolife 356 and Ms. Floro reasonably relied upon the representations of Metabolife.

79.    Metabolife failed to remove and recall Metabolife 356 from the market place upon learning of the unreasonable harm the product caused to human beings.

80.    These and other misrepresentations and failures to disclose material facts about Metabolife 356 were made by Metabolife with the intent to deceive Ms. Floro, the general public, and the FDA, with the intent to induce them to use Metabolife 356, and with the intent that they be relied upon by Ms. Floro.

81.    Ms. Floro, at the time these misrepresentations and omissions of material fact were made by Metabolife, and at the time Ms. Floro used Metabolife 356, was reasonably unaware of the falsity of Metabolife's misrepresentations.  Ms. Floro therefore reasonably relied on Metabolife's misrepresentations that Metabolife 356 was safe as warranted by Metabolife.

82.    At all times material hereto, Ms. Floro did not know and could not have known with the exercise of reasonable care that she was exposing herself to serious illnesses and adverse health risks, because Metabolife fraudulently misrepresented its product.

83.    In reliance on Metabolife's representations, Ms. Floro was induced to and did use Metabolife 356.  If Ms. Floro had known the facts about Metabolife 356, she would not have used the product.

84.    The aforesaid conduct of Metabolife demonstrates willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, Ms. Floro's rights.

14

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff Lauren Floro, by and through her attorneys, prays for relief

against Defendants Metabolife International, Inc. and Walgreen Co. as follows:

1.   For general damages according to proof;

2.   Medical, incidental, hospital, and service expenses according to proof;

3.   Loss of earning and earning capacity according to proof;

4.   Prejudgment and post-judgment interest as provided by law;

5.   Compensatory damages, according to proof;

6.   Consequential damages, according to proof;

7.   Punitive and exemplary damages to the furthest extent permitted;

8.   Treble damages, pursuant to M.G.L. c. 93A;

8.   Attorneys' fees, expenses, and costs of this action; and

9.   Such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Floro hereby demands a jury trial on all claims so triable in this action.


Respectfully submitted,

LAUREN FLORO,
By her attorneys,

Robert J. O'Regan, BBO #379970
Paul R. Mastrocola, BBO #640664
Hannah H. Marsdale, BBO #647210
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts  02110-1624
(617) 345-3000

00870697

15

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
(TORT)— MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

............................ , ss

MIDDLESEX

[seal]

No.  04-3651

LAUREN  FLORO

............................................... , Plaintiff(s)

v.

METABOLIFE INTERNATIONAL, WALGREEN CO., and
WALGREEN EASTERN CO., INC Defendant(s)

## SUMMONS

Walgreen Co., and Walgreen Eastern Co., Inc.

To the above-named Defendant: c/o Corporation Service Co., 84 State Street, Boston, MA

You are hereby summoned and required to serve upon Robert J. O'Regan, Esq. ..........................

..Burns & Levinson LLP........... plaintiff's attorney, whose address is ....125 Summer Street......

Boston, MA  02110 ............................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .Middlesex County.....

......... Superior Court ...................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ...40 Thorndike Street, Cambridge, MA....02141

the ............... 10th ............................................. day of ...December..................................................

...................., in the year of our Lord ........... 2004 ....................................... .

*Edward J Sullivan*

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTE:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:**
(TORT) — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04–3651

.................... MIDDLESEX ............. , ss
[seal]

............................................. , Plaintiff(s)
**LAUREN FLORO**

v.

**METABOLIFE, INTERNATIONAL**
**WALGREEN CO.** AND
........................................... , Defendant(s)
WALGREEN EASTERN CO, INC.

## SUMMONS

Walgreen Eastern Co, Inc.and
To the above-named Defendant: **Walgreen Co.** c/o Corporation Service Co., 84 State Street
Boston, MA

You are hereby summoned and required to serve upon ..... **Robert J. O'Regan, Esq.** ..................

**Burns & Levinson LLP** ............. plaintiff's attorney, whose address is ..... **125 Summer Street** .....

**Boston, MA  02110** ................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .................... **Middlesex County** ....

**Superior Court** ........................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ..... **40 Thorndike St., Cambridge, MA  02141**

the ...................... **17th** .......................... day of ..... **September** ...........................................

...................., in the year of our Lord ... **2004** ................................. .

*Edward J Sullivan*
Clerk

<div style="writing-mode: vertical">NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.</div>

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —**
(TORT) — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.
MICV2004–03651–B

MIDDLESEX .............. , ss
[seal]

LAUREN FLORO
.............................................. , Plaintiff(s)

v.

METABOLIFE INTERNATIONAL, INC. and
WALGREEN CO. & WALGREEN EASTERN CO., INC.
.............................................. , Defendant(s)

## SUMMONS

WALGREEN CO., AND WALGREEN EASTERN CO., 15 MAIN STREET,
To the above-named Defendant: WALTHAM, MA

You are hereby summoned and required to serve upon ..... Robert J. O'Regan, Esq. ....................

Burns & Levinson LLP ............. plaintiff's attorney, whose address is ..125..Summer..Street.......

Boston, MA 02110 ............................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at Middlesex..County......

Superior Court ....................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at .40..Thorndike..Street,..Cambridge,..MA..02141..

the ...10th.................................... day of ...September............................................

...................., in the year of our Lord ......2004............................. .

*Edward J Sullivan*

**Clerk**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:—**
(TORT)— MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.
MICV2004-03651-B

................MIDDLESEX................ , ss
[seal]

LAUREN FLORO
............................................... , Plaintiff(s)

v.

METABOLIFE INTERNATIONAL, INC. and

WALGREEN CO., AND WALGREEN............ , Defendant(s)
EASTERN CO., INC.

## SUMMONS

To the above-named Defendant: Walgreen Co., and Walgreen Eastern Co., Inc.
15 Main Street, Waltham, MA
    You are hereby summoned and required to serve upon ........Robert J. O'Regan, Esquire............

Burns.&.Levinson.LLP............... plaintiff's attorney, whose address is ..125..Summer.Street.......

Boston, MA 02110................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at Middlesex.County......

    Superior Court................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

    Witness, Suzanne V. DelVecchio, Esquire, at ..40..Thorndike..Street,..Cambridge,..MA...02141.

the ..........10th....................................... day of ..December...................................................

....................., in the year of our Lord ........2004............................. .

*Edward J Sullivan*
**Clerk**

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

12/16/2004 08:02 FAX  312 984 6672    JOHNSON & BELL LTD. 1    @005/038



TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 04-3651

MIDDLESEX .............. , ss
[seal]

LAUREN FLORO ..................... , Plaintiff(s)

v.

METABOLIFE INTERNATIONAL, WALGREEN CO., and
WALGREEN EASTERN CO., , INC Defendant(s)

## SUMMONS

Walgreen Co., and Walgreen Eastern Co., Inc.
To the above-named Defendant: c/o Corporation Service Co., 84 State Street, Boston, MA

You are hereby summoned and required to serve upon Robert J. O'Regan, Esq.

Burns & Levinson LLP ........... plaintiff's attorney, whose address is ....125 Summer Street.....

Boston, MA  02110 .................................. , an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .Middlesex County.....

....... Superior Court ............................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ...40 Thorndike Street, Cambridge, MA......021A1

the ..........10th............................. day of ...December.................................

.......................... in the year of our Lord .............. 2004

A TRUE OF TRUE COPY, ATTEST

[signature]                                          [signature] Edward J Sullivan

Clerk

COURT APPOINTED PROCESS SERVER

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

# COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
### SUPERIOR COURT DEPARTMENT

Middlesex, ss.

CIVIL ACTION NO: MICV2004-03651-B

|  |  |
|---|---|
| LAUREN FLORO, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| METABOLIFE INTERNATIONAL INC., | ) |
| WALGREEN CO., AND WALGREEN | ) |
| EASTERN CO., INC. | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

## INTRODUCTION

This is an action to recover damages for personal injuries sustained by Plaintiff Lauren Floro as the result of purchasing and ingesting Metabolife 356, a supplement manufactured by Defendant Metabolife International, Inc. and sold by Defendants Walgreen Co. and Walgreen Eastern Co., Inc., which caused Ms. Floro, at age twenty-one, to suffer a stroke and to thereby sustain serious and permanent injuries.

## PARTIES

1.    Plaintiff Lauren Floro ("Ms. Floro") resides at 18 Fernglade Road, Burlington, Massachusetts.

2.    Defendant Metabolife International, Inc. ("Metabolife") is a privately-owned California corporation with a principal place of business at 5643 Copley Drive, San Diego, California.

3.    Defendants Walgreen Co. and Walgreen Eastern Co., Inc. (collectively "Walgreens"), have a principal place of business at 200 Wilmot Road, Deerfield, Illinois.

Defendant Walgreen Co. is a public company incorporated in Illinois with corporate headquarters at 200 Wilmot Road, Deerfield, Illinois. Defendant Walgreen Eastern Co., Inc. is a corporation organized under the laws of New York and registered to do business in Massachusetts. Walgreens has 4,480 store locations in forty-four states and Puerto Rico, including a store located at 15 Main Street, Waltham, Massachusetts.

## JURISDICTION AND VENUE

4.    The claims set forth in this Complaint are within the general jurisdiction of the Superior Court. This Court has personal jurisdiction over Metabolife pursuant to Massachusetts General Laws c. 223A, § 3, the Massachusetts Long-Arm Statute. This Court has personal jurisdiction over Walgreens because the store at which Ms. Floro purchased Metabolife 356 is located in Waltham, Massachusetts. Venue is proper in Middlesex County pursuant to Massachusetts General Laws c. 223, § 1 because Ms. Floro is a resident of Middlesex County.

## FACTS

5.    In or about July 2001, Ms. Floro purchased Metabolife 356 from the Walgreens store located at 15 Main Street, Waltham, Massachusetts.

6.    Metabolife 356 is a dietary supplement containing ephedra that was manufactured by Metabolife.

7.    The product label for Metabolife 356 recommended that adults take one to two caplets two to three times per day, or every four hours, not to exceed eight caplets per day. The label also recommended that consumers should not use the product for more than twelve weeks, and that exceeding the recommended amount may cause serious adverse effects, including heart attack or stroke. Other possible side effects mentioned on the label include rapid heartbeat, dizziness, severe headache, and shortness of breath.

8.    Ms. Floro ingested Metabolife 356 as instructed by the label affixed to the bottle for a period of less than twelve weeks.

9.    On or about September 23, 2001, Ms. Floro ingested Metabolife 356, again in a manner consistent with Metabolife's instructions. She took two pills in the morning and two pills in the evening, as directed by the product label. Later that day, Ms. Floro suffered a stroke. At the time of her stroke, Ms. Floro was twenty-one years old. In connection with that stroke, Ms. Floro has suffered significant personal injuries, as a result of taking Metabolife's ephedra-containing product Metabolife 356.

10.    At all relevant times Metabolife did research, develop, manufacture, create, design, test, label, package, distribute, supply, market, sell, promote, and/or advertise ephedra-containing Metabolife 356. At all relevant times Walgreens did sell, promote, and/or advertise ephedra-containing Metabolife 356.

### CHRONOLOGY

11.    In 1994, ephedra-containing dietary supplements were sold over-the-counter worldwide, with little oversight by the U.S. Food and Drug Administration ("FDA"). Under the Dietary Supplement Health and Education Act of 1994, dietary supplements are generally marketed without prior FDA review of their safety and effectiveness; manufacturers of dietary supplements are responsible for ensuring the safety of the dietary supplements they sell. Therefore, the FDA relies on the voluntary reports of adverse events from consumers, health professionals, and the manufacturers themselves in its effort to oversee the safety of dietary supplements.

12.    In or about June, 2002, the FDA requested that the U.S. Department of Justice pursue a criminal investigation of Metabolife's conduct involving its product Metabolife 356.

3

Specifically, the FDA and Department of Justice officials have accused Metabolife of making false statements of fact regarding the safety of Metabolife 356. At issue is a 1998 statement by Metabolife's President Michael Ellis to the FDA that Metabolife had "never received one notice from a consumer that any serious adverse health event has occurred because of the ingestion of Metabolife 356."

13.     In or about August, 2002, the U.S. Justice Department began conducting criminal investigations into the safety and effects of dietary supplements containing ephedra.

14.     In or about March, 2003, the U.S. General Accounting Office ("GAO") issued a report reviewing the records of Metabolife regarding health-related calls it received from users of Metabolife's product, Metabolife 356. The GAO's review found 14,684 call records that contained reports that contained at least one adverse event. The GAO also found that reports of serious adverse effects had been made to Metabolife, including heart attack, stroke, seizure, cardiac arrest, and death. The GAO counted 96 such reports collected from consumers between May, 1997 through July, 2002.

15.     The GAO also found that Metabolife had received reports of significantly elevated blood pressure, abnormal rhythm, loss of consciousness, and systemic rash, but the incomplete nature of Metabolife's own records did not allow the GAO to conclude that the adverse events reported were caused by Metabolife 356.

16.     In May, 2003, Illinois became the first state to ban the use of dietary supplements containing ephedra. California later followed in October, 2003, and New York also banned ephedra in November, 2003.

4

17.   As of September 27, 2002, the FDA had received approximately 1,800 adverse event reports regarding consumers of dietary supplements containing ephedra.  Of these reports, 322 specifically concerned Metabolife's product, Metabolife 356.

18.   In or about June, 2003, Metabolife agreed to produce to the FDA 13,000 reports from consumers concerning health-related concerns linked to Metabolife 356.

19.   On December 30, 2003, the FDA finally announced a nationwide ban of ephedra, due to evidence that products containing ephedra are not safe for human consumption and can cause serious adverse health effects.

20.   On April 12, 2004, the FDA ban became effective, making it illegal to sell products containing ephedra, such as Metabolife 356.

## HARMFUL EFFECTS OF EPHEDRA

21.   Dietary supplements containing ephedra, including Metabolife's product, Metabolife 356, have been linked to substantial increases in blood pressure, heart rate, and arrhythmia, as well as other effects simulating amphetamine, such as nervousness, hyperactivity, increased energy, anxiety, increased insomnia, tremor, and dry mouth.

22.   Dietary supplements containing ephedra have also been found to stimulate the central nervous system and to cause intracranial hemorrhage, hypertension, palpitations, tachycardia, arrhythmias, dysrhythmias, myocardial infarctions, seizures, strokes, tremors, psychosis, nervousness, headaches, vertigo, gastrointestinal distress, and even death.

## DEFENDANTS' WRONGFUL CONDUCT

23.   The facts set forth in Paragraphs 21 and 22 herein were not disclosed on the product label of Metabolife 356.

24.    Pursuant to the Dietary and Supplement Health and Education Act of 1994, manufacturers of dietary supplements are responsible to ensure the safety and integrity of their products, including products containing ephedra, such as Metabolife 356.

25.    Defendant Metabolife engaged in a diverse and wide-sweeping marketing and promotional campaign to sell Metabolife 356, during which it misinformed and misled Ms. Floro about the adverse health effects of its product.  Metabolife and Walgreens failed to protect Ms. Floro and other users from the serious dangers of Metabolife 356, which Metabolife and Walgreens knew or should have known resulted from its ingredient ephedra.

26.    Metabolife and Walgreens' efforts to promote Metabolife 356 included, but were not limited to, claims that Metabolife 356 would allow consumers, including Ms. Floro, to stimulate fat loss, preserve lean muscle mass, increase energy, and increase metabolism.

27.    Metabolife failed to formulate, manufacture, design, and compound Metabolife 356 so as not to constitute an unreasonable risk of death, intracranial hemorrhage, heart attack, seizure, or stroke.

28.    The warning label for Metabolife 356 failed to adequately warn of the inherent dangers and risks it carried, and also failed to warn with an intensity commensurate with the existent danger.  Metabolife and Walgreens failed to warn Ms. Floro and other over-the-counter consumers of the risks associated with Metabolife 356, including death, intracranial hemorrhage, heart attack, stroke, seizure, and psychosis.

## CLAIMS FOR RELIEF

### COUNT I VS. METABOLIFE AND WALGREENS
### STRICT LIABILITY

29.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 3 as if set forth in full.

6

30.    Metabolife and Walgreens are strictly liable to Ms. Floro as follows:

31.    Metabolife was engaged in the business of manufacturing, promoting, marketing, advertising, distributing, supplying, and selling Metabolife 356, which contains ephedra. Walgreens was engaged in the business of promoting, marketing, advertising, distributing, supplying and selling Metabolife 356.  Metabolife and Walgreens sold and distributed Metabolife 356 to Ms. Floro in the Commonwealth of Massachusetts.

32.    Ms. Floro was using Metabolife 356, as instructed by the product label, in a manner for which it was intended, or in a reasonably foreseeable manner.

33.    Metabolife 356 was expected to and did reach the Ms. Floro without substantial change in its condition as manufactured by Metabolife and sold by Metabolife and Walgreens.

34.    Metabolife and Walgreens knew or should have known that the foreseeable risks associated with Metabolife 356 as manufactured and/or distributed by them exceeded any of its potential benefits.

35.    Ms. Floro was not aware and could not have reasonably discovered the dangerous nature of the Metabolife 356 that she purchased from Metabolife and Walgreens.

36.    The Metabolife 356 manufactured and/or distributed by Metabolife and Walgreens caused or subjected Ms. Floro to suffer a stroke upon her consumption of it and therefore constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the misrepresentations of Metabolife and Walgreens and their failure to disclose adequate facts to Ms. Floro.

37.    As a direct and proximate result of Metabolife's design and manufacture, and Metabolife and Walgreens' promotion and sale of Metabolife 356, Ms. Floro (a) suffered serious and grievous personal injuries; (b) incurred economic loss, including the loss of earnings and

loss of earning capacity; and (c) was required to expend fair and reasonable expenses for necessary health care, attention, and services.

38.    Therefore, Metabolife and Walgreens are strictly liable to Ms. Floro.

## COUNT II VS. METABOLIFE AND WALGREENS
## NEGLIGENCE

39.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 38 as if set forth in full.

40.    It was the duty of Metabolife and Walgreens to use reasonable care in the manufacture, promotion, marketing, advertising, distribution and sale of Metabolife 356.

41.    Contrary to its duty, Metabolife and Walgreens committed one or more of the following careless and negligent acts and/or omissions, in that Metabolife and Walgreens:

a.    Failed to adequately and properly test and inspect Metabolife 356 so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of Metabolife 356;

c.    Failed to manufacture Metabolife 356 in a reasonable and safe condition for which it was intended;

d.    Failed to adequately and properly warn Ms. Floro of the risk of adverse side effects when Metabolife 356 was used in the manner for which it was intended;

e.    Failed to adequately and properly label Metabolife 356 so as to warn the Ms. Floro of the risk of adverse side effects;

f.    Manufactured Metabolife 356, which constituted a hazard to health;

g.    Manufactured Metabolife 356, which caused adverse side effects;

8

h. Were otherwise careless and negligent.

42. As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe injuries.

## COUNT III VS. METABOLIFE AND WALGREENS VIOLATIONS OF MASSACHUSETTS CONSUMER PROTECTION ACT M.G.L. CHAPTER 93A

43. Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 42 as if set forth in full.

44. Metabolife and Walgreens engaged in unfair competition or unfair or deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Massachusetts General Laws c. 93A, when they:

a. Through advertising, warranties, and other express representations, falsely represented that Metabolife 356 had benefits or characteristics that it did not actually have;

b. Falsely represented that Metabolife 356 was of a particular standard or quality when it was not;

c. Concealed and suppressed facts material to the true characteristics, standards, and quality of Metabolife 356 in its advertising.

45. Metabolife and Walgreens are and have been at all relevant times "persons engaged in trade or commerce" within the meaning of Massachusetts General Laws c. 93A.

46. Metabolife and Walgreens' unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

47. Metabolife and Walgreens' deceptive practices were specifically designed to induce the Ms. Floro to buy and to use Metabolife 356.

48.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

49.     Ms. Floro is entitled to recover up to three (3) times the amount of her actual damages, together with attorneys' fees and costs, pursuant to Massachusetts General Laws c. 93A.

## COUNT IV VS. METABOLIFE AND WALGREENS
## BREACH OF EXPRESS WARRANTY

50.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 49 as if set forth in full.

51.     Metabolife and Walgreens expressly warranted to Ms. Floro, by and through statements made by them or by their authorized agents or sales representatives, orally, in publications, on bottles of its product, and in other written materials, that the Metabolife 356 which Metabolife manufactured, and which Metabolife and Walgreens promoted, marketed, advertised, distributed and sold to Ms. Floro was of merchantable quality and fit, and was safe for human use and otherwise not injurious to Ms. Floro's health and well-being.

52.     Ms. Floro reasonably relied upon Metabolife and Walgreens' guarantees and express warranties when she purchased and used Metabolife 356.

53.     The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit for human use, and otherwise injurious to Ms. Floro, notwithstanding Metabolife and Walgreens' guarantees and express warranties.

54.     Metabolife and Walgreens breached their express warranty in that Metabolife 356 was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms. Floro's health and well-being.

55. As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT V VS. METABOLIFE AND WALGREENS
### BREACH OF IMPLIED WARRANTY

56. Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 55 as if set forth in full.

57. Metabolife and Walgreens impliedly warranted to Ms. Floro that Metabolife 356 was of merchantable quality and fit, and was safe for human use and otherwise not injurious to Ms. Floro's health and well-being.

58. Ms. Floro, in reasonable reliance upon the guarantees and implied warranties of Metabolife and Walgreens, purchased and used Metabolife 356.

59. The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit for human use and otherwise injurious to Ms. Floro, notwithstanding the guarantees and implied warranties of Metabolife and Walgreens.

60. Metabolife and Walgreens breached their implied warranties in that Metabolife 356 was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms. Floro's health and well-being.

61. As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT VI VS. METABOLIFE
### NEGLIGENT MISREPRESENTATION

62. Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 61 as if set forth in full.

63.    In continuing to sell and distribute Metabolife 356 for use by Ms. Floro while failing to warn Ms. Floro of the dangers of using dietary supplements containing ephedra, after Metabolife learned or should have learned of these dangers, Metabolife negligently misrepresented that Metabolife 356 was fit for use, merchantable, and reasonably safe for its intended purpose.

64.    The representations and omissions of material fact by Metabolife were in fact false. The true facts, which Metabolife failed to disclose and/or falsified to the public and to the FDA, were that Metabolife 356 could cause severe medical problems to consumers, including Ms. Floro.

65.    When Metabolife made these representations and omissions of material fact, it knew or should have known that the representations were false, that the omissions of material fact were misleading, and that the misrepresentations were made with no reasonable ground for believing them to be true.

66.    The representations and omissions of material fact were made by Metabolife with the intent to deceive the Ms. Floro, the general public, and the FDA, with intent to induce them to use Metabolife 356.

67.    At the time the aforesaid representations and omissions of material fact were made, Metabolife concealed from Ms. Floro, the general public, and the FDA, its lack of adequate testing and research and its lack of information about the safety of Metabolife 356.

68.    At the time these representations and omissions of material fact were made by Metabolife , and at the time Ms. Floro used Metabolife 356, Ms. Floro was reasonably unaware of the falsity of Metabolife's representations, and Ms. Floro reasonably believed that Metabolife 356 was safe as warranted by Metabolife and Walgreens.

69.     Ms. Floro reasonably relied upon such misrepresentations, either directly or indirectly, and was induced to and did use Metabolife 356.

70.     Had Ms. Floro known of the actual facts, which Metabolife failed to disclose, she would not have used Metabolife 356.

71.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT VII VS. METABOLIFE
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT

72.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 71 as if set forth in full.

73.     Metabolife made false statements, intentionally committed fraud, and conspired to hide the truth regarding the safety, expected and known complications and other material information regarding Metabolife 356.

74.     Metabolife knowingly and purposely made false and fraudulent representations, directly or indirectly to Ms. Floro, including but not limited to, that (a) Metabolife 356 was fit for its intended purpose, (b) that Metabolife 356 had been adequately and reliably tested when it had not, and (c) that Metabolife 356 was safe and appropriate for use by human beings.

75.     Metabolife possesses or possessed scientific data to demonstrate that the Metabolife 356 which it manufactured, promoted, marketed, advertised, distributed and sold was linked to serious illnesses and medical complications.

76.     Metabolife intentionally and/or recklessly hid this information or misrepresented this information to federal regulatory agencies, including the FDA, and the public at large.

77.     Metabolife knew or was reckless in not knowing the falsity of these representations.

78.     This information was material to Ms. Floro's decision to use Metabolife 356 and Ms. Floro reasonably relied upon the representations of Metabolife.

79.     Metabolife failed to remove and recall Metabolife 356 from the market place upon learning of the unreasonable harm the product caused to human beings.

80.     These and other misrepresentations and failures to disclose material facts about Metabolife 356 were made by Metabolife with the intent to deceive Ms. Floro, the general public, and the FDA, with the intent to induce them to use Metabolife 356, and with the intent that they be relied upon by Ms. Floro.

81.     Ms. Floro, at the time these misrepresentations and omissions of material fact were made by Metabolife, and at the time Ms. Floro used Metabolife 356, was reasonably unaware of the falsity of Metabolife's misrepresentations.  Ms. Floro therefore reasonably relied on Metabolife's misrepresentations that Metabolife 356 was safe as warranted by Metabolife.

82.     At all times material hereto, Ms. Floro did not know and could not have known with the exercise of reasonable care that she was exposing herself to serious illnesses and adverse health risks, because Metabolife fraudulently misrepresented its product.

83.     In reliance on Metabolife's representations, Ms. Floro was induced to and did use Metabolife 356.  If Ms. Floro had known the facts about Metabolife 356, she would not have used the product.

84.     The aforesaid conduct of Metabolife demonstrates willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, Ms. Floro's rights.

14

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff Lauren Floro, by and through her attorneys, prays for relief against Defendants Metabolife International, Inc. and Walgreen Co. as follows:

1.  For general damages according to proof;

2.  Medical, incidental, hospital, and service expenses according to proof;

3.  Loss of earning and earning capacity according to proof;

4.  Prejudgment and post-judgment interest as provided by law;

5.  Compensatory damages, according to proof;

6.  Consequential damages, according to proof;

7.  Punitive and exemplary damages to the furthest extent permitted;

8.  Treble damages, pursuant to M.G.L. c. 93A;

8.  Attorneys' fees, expenses, and costs of this action; and

9.  Such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Floro hereby demands a jury trial on all claims so triable in this action.

Respectfully submitted,

LAUREN FLORO,
By her attorneys,

_Robert J. O'Regan_

Robert J. O'Regan, BBO #379970
Paul R. Mastrocola, BBO #630664
Diane A.D. Noël, BBO #656430
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts  02110-1624
(617) 345-3000

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the Attorney of record of each other party by mail/hand on _____ 2005
Diane A.D. Noël, Esq.
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110-1624
(617) 345-3000

00891432

15

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S)<br>Lauren Floro | DEFENDANT(S)<br>Metabolife International, Inc.<br>Walgreen Co. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Paul R. Mastrocola, Esq., Burns & Levinson<br>LLP, 125 Summer St., Boston, MA  02110<br>Board of Bar Overseers number:  630664 | ATTORNEY (if known)<br><br>Unknown |

## Origin code and track designation

Place an x in one box only:

☒ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial)  (F)
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B05 | Product Liability | ( A ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses ..................................................... estimated ............ $.... 20,000.
2.  Total Doctor expenses ....................................................................................... $...........
3.  Total chiropractic expenses ............................................................................... $...........
4.  Total physical therapy expenses ........................................................................ $...........
5.  Total other expenses (describe) ......................................................................... $...........
                                                                                Subtotal $.... 20,000.
B.  Documented lost wages and compensation to date ............................................. $...........
C.  Documented property damages to date ............................................................... $...........
D.  Reasonably anticipated future medical and hospital expenses ........................... $...........
E.  Reasonably anticipated lost wages ..................................................................... $...........
F.  Other documented items of damages (describe)

                                                                                $...........
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

    Suffered stroke which resulted in permanent injuries

                                                                                $ 10,000,000.
                                                                        TOTAL $ 10,020,000.

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                                                TOTAL $ ............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record __________    DATE: 9/16/04

AOTC-6 mtc-005-11/99

# CIVIL ACTION
# COVER SHEET

DOCKET NO.(S)

**01-3651**

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Lauren Floro | Metabolife International, Inc.<br>Walgreen Co. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Paul R. Mastrocola, Esq., Burns & Levinson<br>LLP, 125 Summer St., Boston, MA  02110<br>Board of Bar Overseers number:  630664 | Unknown |

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B05 | Product Liability | ( A ) | ( X ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.**

## TORT CLAIMS
(Attach additional sheets as necessary)

A.    Documented medical expenses to date:
1.    Total hospital expenses .................................................. $ 20,000.00
2.    Total Doctor expenses .................................................. $
3.    Total chiropractic expenses ............................................ $
4.    Total physical therapy expenses ....................................... $
5.    Total other expenses (describe) ....................................... $

ESTIMATED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR _____ MIDDLESEX.

**SEP 16 2004**

_Edwin V. _____
CLERK_

Subtotal $ 20,000.00

B.    Documented lost wages and compensation to date ..................... $
C.    Documented property damages to date ................................ $
D.    Reasonably anticipated future medical and hospital expenses ......... $
E.    Reasonably anticipated lost wages ................................... $
F.    Other documented items of damages (describe)

$

G.    Brief description of plaintiff's injury, including nature and extent of injury (describe)

Suffered stroke which resulted in permanent injuries

$ 10,000,000.00
**TOTAL $ 10,020,000.00**

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**TOTAL $. ............**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _Robert O'Regan_    DATE: 9/16/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

CIVIL ACTION NO: _____

| | |
|---|---|
| LAUREN FLORO, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METABOLIFE INTERNATIONAL INC., | ) |
| and | ) |
| WALGREEN CO., | ) |
| Defendants. | ) |

04-3651

**COMPLAINT**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

SEP 16 2004

*Edward J. Sullivan*
CLERK

## **INTRODUCTION**

This is an action to recover damages for personal injuries sustained by Plaintiff Lauren Floro as the result of purchasing and ingesting Metabolife 356, a supplement manufactured by Defendant Metabolife International, Inc. and sold by Defendant Walgreen Co., which caused Ms. Floro, at age twenty-one, to suffer a stroke and to thereby sustain serious and permanent injuries.

## **PARTIES**

1.    Plaintiff Lauren Floro ("Ms. Floro") resides at 18 Fernglade Road, Burlington, Massachusetts.

2.    Defendant Metabolife International, Inc. ("Metabolife") is a privately-owned California corporation with a principal place of business at 5643 Copley Drive, San Diego, California.

```
0312E000009/16/04CIVIL        240.00
0312E000009/16/04SUR CHARGE    15.00
0312E000009/16/04SECC          20.00
```

3.    Defendant Walgreen Co. ("Walgreens") is a public company incorporated in Illinois with a with corporate headquarters at 200 Wilmot Road, Deerfield, Illinois.  Walgreens

has 4,480 store locations in forty-four states and Puerto Rico, including a store located at 15 Main Street, Waltham, Massachusetts.

## JURISDICTION AND VENUE

4.      The claims set forth in this Complaint are within the general jurisdiction of the Superior Court. This Court has personal jurisdiction over Metabolife pursuant to Massachusetts General Laws c. 223A, § 3, the Massachusetts Long-Arm Statute. This Court has personal jurisdiction over Walgreens because the store at which Ms. Floro purchased Metabolife 356 is located in Waltham, Massachusetts. Venue is proper in Middlesex County pursuant to Massachusetts General Laws c. 223, § 1 because Ms. Floro is a resident of Middlesex County.

## FACTS

5.      In or about July 2001, Ms. Floro purchased Metabolife 356 from the Walgreens store located at 15 Main Street, Waltham, Massachusetts.

6.      Metabolife 356 is a dietary supplement containing ephedra that was manufactured by Metabolife.

7.      The product label for Metabolife 356 recommended that adults take one to two caplets two to three times per day, or every four hours, not to exceed eight caplets per day. The label also recommended that consumers should not use the product for more than twelve weeks, and that exceeding the recommended amount may cause serious adverse effects, including heart attack or stroke. Other possible side effects mentioned on the label include rapid heartbeat, dizziness, severe headache, and shortness of breath.

8.      Ms. Floro ingested Metabolife 356 as instructed by the label affixed to the bottle for a period of less than twelve weeks.

9.    On or about September 23, 2001, Ms. Floro ingested Metabolife 356, again in a manner consistent with Metabolife's instructions. She took two pills in the morning and two pills in the evening, as directed by the product label. Later that day, Ms. Floro suffered a stroke. At the time of her stroke, Ms. Floro was twenty-one years old. In connection with that stroke, Ms. Floro has suffered significant personal injuries, as a result of taking Metabolife's ephedra-containing product Metabolife 356.

10.    At all relevant times Metabolife did research, develop, manufacture, create, design, test, label, package, distribute, supply, market, sell, promote, and/or advertise ephedra-containing Metabolife 356. At all relevant times Walgreens did sell, promote, and/or advertise ephedra-containing Metabolife 356.

## CHRONOLOGY

11.    In 1994, ephedra-containing dietary supplements were sold over-the-counter worldwide, with little oversight by the U.S. Food and Drug Administration ("FDA"). Under the Dietary Supplement Health and Education Act of 1994, dietary supplements are generally marketed without prior FDA review of their safety and effectiveness; manufacturers of dietary supplements are responsible for ensuring the safety of the dietary supplements they sell. Therefore, the FDA relies on the voluntary reports of adverse events from consumers, health professionals, and the manufacturers themselves in its effort to oversee the safety of dietary supplements.

12.    In or about June, 2002, the FDA requested that the U.S. Department of Justice pursue a criminal investigation of Metabolife's conduct involving its product Metabolife 356. Specifically, the FDA and Department of Justice officials have accused Metabolife of making false statements of fact regarding the safety of Metabolife 356. At issue is a 1998 statement by

3

Metabolife's President Michael Ellis to the FDA that Metabolife had "never received one notice from a consumer that any serious adverse health event has occurred because of the ingestion of Metabolife 356."

13.    In or about August, 2002, the U.S. Justice Department began conducting criminal investigations into the safety and effects of dietary supplements containing ephedra.

14.    In or about March, 2003, the U.S. General Accounting Office ("GAO") issued a report reviewing the records of Metabolife regarding health-related calls it received from users of Metabolife's product, Metabolife 356.  The GAO's review found 14,684 call records that contained reports that contained at least one adverse event.  The GAO also found that reports of serious adverse effects had been made to Metabolife, including heart attack, stroke, seizure, cardiac arrest, and death.  The GAO counted 96 such reports collected from consumers between May, 1997 through July, 2002.

15.    The GAO also found that Metabolife had received reports of significantly elevated blood pressure, abnormal rhythm, loss of consciousness, and systemic rash, but the incomplete nature of Metabolife's own records did not allow the GAO to conclude that the adverse events reported were caused by Metabolife 356.

16.    In May, 2003, Illinois became the first state to ban the use of dietary supplements containing ephedra.  California later followed in October, 2003, and New York also banned ephedra in November, 2003.

17.    As of September 27, 2002, the FDA had received approximately 1,800 adverse event reports regarding consumers of dietary supplements containing ephedra.  Of these reports, 322 specifically concerned Metabolife's product, Metabolife 356.

18.    In or about June, 2003, Metabolife agreed to produce to the FDA 13,000 reports from consumers concerning health-related concerns linked to Metabolife 356.

19.    On December 30, 2003, the FDA finally announced a nationwide ban of ephedra, due to evidence that products containing ephedra are not safe for human consumption and can cause serious adverse health effects.

20.    On April 12, 2004, the FDA ban became effective, making it illegal to sell products containing ephedra, such as Metabolife 356.

## HARMFUL EFFECTS OF EPHEDRA

21.    Dietary supplements containing ephedra, including Metabolife's product, Metabolife 356, have been linked to substantial increases in blood pressure, heart rate, and arrhythmia, as well as other effects simulating amphetamine, such as nervousness, hyperactivity, increased energy, anxiety, increased insomnia, tremor, and dry mouth.

22.    Dietary supplements containing ephedra have also been found to stimulate the central nervous system and to cause intracranial hemorrhage, hypertension, palpitations, tachycardia, arrhythmias, dysrhythmias, myocardial infarctions, seizures, strokes, tremors, psychosis, nervousness, headaches, vertigo, gastrointestinal distress, and even death.

## DEFENDANTS' WRONGFUL CONDUCT

23.    The facts set forth in Paragraphs 21 and 22 herein were not disclosed on the product label of Metabolife 356.

24.    Pursuant to the Dietary and Supplement Health and Education Act of 1994, manufacturers of dietary supplements are responsible to ensure the safety and integrity of their products, including products containing ephedra, such as Metabolife 356.

25.    Defendant Metabolife engaged in a diverse and wide-sweeping marketing and promotional campaign to sell Metabolife 356, during which it misinformed and misled Ms. Floro about the adverse health effects of its product. Metabolife and Walgreens failed to protect Ms. Floro and other users from the serious dangers of Metabolife 356, which Metabolife and Walgreens knew or should have known resulted from its ingredient ephedra.

26.    Metabolife and Walgreens' efforts to promote Metabolife 356 included, but were not limited to, claims that Metabolife 356 would allow consumers, including Ms. Floro, to stimulate fat loss, preserve lean muscle mass, increase energy, and increase metabolism.

27.    Metabolife failed to formulate, manufacture, design, and compound Metabolife 356 so as not to constitute an unreasonable risk of death, intracranial hemorrhage, heart attack, seizure, or stroke.

28.    The warning label for Metabolife 356 failed to adequately warn of the inherent dangers and risks it carried, and also failed to warn with an intensity commensurate with the existent danger. Metabolife and Walgreens failed to warn Ms. Floro and other over-the-counter consumers of the risks associated with Metabolife 356, including death, intracranial hemorrhage, heart attack, stroke, seizure, and psychosis.

## CLAIMS FOR RELIEF

### COUNT I VS. METABOLIFE AND WALGREENS
### STRICT LIABILITY

29.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 28 as if set forth in full.

30.    Metabolife and Walgreens are strictly liable to Ms. Floro as follows:

31.    Metabolife was engaged in the business of manufacturing, promoting, marketing, advertising, distributing, supplying, and selling Metabolife 356, which contains ephedra.

6

Walgreens was engaged in the business of promoting, marketing, advertising, distributing, supplying and selling Metabolife 356. Metabolife and Walgreens sold and distributed Metabolife 356 to Ms. Floro in the Commonwealth of Massachusetts.

32.    Ms. Floro was using Metabolife 356, as instructed by the product label, in a manner for which it was intended, or in a reasonably foreseeable manner.

33.    Metabolife 356 was expected to and did reach the Ms. Floro without substantial change in its condition as manufactured by Metabolife and sold by Metabolife and Walgreens.

34.    Metabolife and Walgreens knew or should have known that the foreseeable risks associated with Metabolife 356 as manufactured and/or distributed by them exceeded any of its potential benefits.

35.    Ms. Floro was not aware and could not have reasonably discovered the dangerous nature of the Metabolife 356 that she purchased from Metabolife and Walgreens.

36.    The Metabolife 356 manufactured and/or distributed by Metabolife and Walgreens caused or subjected Ms. Floro to suffer a stroke upon her consumption of it and therefore constitutes a product unreasonably dangerous for normal use due to its defective design, defective manufacture, and the misrepresentations of Metabolife and Walgreens and their failure to disclose adequate facts to Ms. Floro.

37.    As a direct and proximate result of Metabolife's design and manufacture, and Metabolife and Walgreens' promotion and sale of Metabolife 356, Ms. Floro (a) suffered serious and grievous personal injuries; (b) incurred economic loss, including the loss of earnings and loss of earning capacity; and (c) was required to expend fair and reasonable expenses for necessary health care, attention, and services.

38.    Therefore, Metabolife and Walgreens are strictly liable to Ms. Floro.

## COUNT II VS. METABOLIFE AND WALGREENS
## NEGLIGENCE

39.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 38 as if set forth in full.

40.     It was the duty of Metabolife and Walgreens to use reasonable care in the manufacture, promotion, marketing, advertising, distribution and sale of Metabolife 356.

41.     Contrary to its duty, Metabolife and Walgreens committed one or more of the following careless and negligent acts and/or omissions, in that Metabolife and Walgreens:

a.     Failed to adequately and properly test and inspect Metabolife 356 so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured and sold;

b.     Failed to utilize and/or implement a reasonably safe design in the manufacture of Metabolife 356;

c.     Failed to manufacture Metabolife 356 in a reasonable and safe condition for which it was intended;

d.     Failed to adequately and properly warn Ms. Floro of the risk of adverse side effects when Metabolife 356 was used in the manner for which it was intended;

e.     Failed to adequately and properly label Metabolife 356 so as to warn the Ms. Floro of the risk of adverse side effects;

f.     Manufactured Metabolife 356, which constituted a hazard to health;

g.     Manufactured Metabolife 356, which caused adverse side effects;

h.     Were otherwise careless and negligent.

42.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe injuries.

8

## COUNT III VS. METABOLIFE AND WALGREENS
## VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT M.G.L. CHAPTER 93A

43.    Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 42 as if set forth in full.

44.    Metabolife and Walgreens engaged in unfair competition or unfair or deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Massachusetts General Laws c. 93A, when they:

a.    Through advertising, warranties, and other express representations, falsely represented that Metabolife 356 had benefits or characteristics that it did not actually have;

b.    Falsely represented that Metabolife 356 was of a particular standard or quality when it was not;

c.    Concealed and suppressed facts material to the true characteristics, standards, and quality of Metabolife 356 in its advertising.

45.    Metabolife and Walgreens are and have been at all relevant times "persons engaged in trade or commerce" within the meaning of Massachusetts General Laws c. 93A.

46.    Metabolife and Walgreens' unfair and deceptive acts and practices occurred primarily and substantially in the Commonwealth of Massachusetts.

47.    Metabolife and Walgreens' deceptive practices were specifically designed to induce the Ms. Floro to buy and to use Metabolife 356.

48.    As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

49.     Ms. Floro is entitled to recover up to three (3) times the amount of her actual

damages, together with attorneys' fees and costs, pursuant to Massachusetts General Laws c.

93A.

## COUNT IV VS. METABOLIFE AND WALGREENS
## BREACH OF EXPRESS WARRANTY

50.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1

through 49 as if set forth in full.

51.     Metabolife and Walgreens expressly warranted to Ms. Floro, by and through

statements made by them or by their authorized agents or sales representatives, orally, in

publications, on bottles of its product, and in other written materials, that the Metabolife 356

which Metabolife manufactured, and which Metabolife and Walgreens promoted, marketed,

advertised, distributed and sold to Ms. Floro was of merchantable quality and fit, and was safe

for human use and otherwise not injurious to Ms. Floro's health and well-being.

52.     Ms. Floro reasonably relied upon Metabolife and Walgreens' guarantees and

express warranties when she purchased and used Metabolife 356.

53.     The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit

for human use, and otherwise injurious to Ms. Floro, notwithstanding Metabolife and Walgreens'

guarantees and express warranties.

54.     Metabolife and Walgreens breached their express warranty in that Metabolife 356

was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms.

Floro's health and well-being.

55.     As a direct and proximate result of one or more of the foregoing unsafe and

defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT V VS. METABOLIFE AND WALGREENS
### BREACH OF IMPLIED WARRANTY

56.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 55 as if set forth in full.

57.     Metabolife and Walgreens impliedly warranted to Ms. Floro that Metabolife 356 was of merchantable quality and fit, and was safe for human use and otherwise not injurious to Ms. Floro's health and well-being.

58.     Ms. Floro, in reasonable reliance upon the guarantees and implied warranties of Metabolife and Walgreens, purchased and used Metabolife 356.

59.     The Metabolife 356 consumed by Ms. Floro was unsafe, unmerchantable, unfit for human use and otherwise injurious to Ms. Floro, notwithstanding the guarantees and implied warranties of Metabolife and Walgreens.

60.     Metabolife and Walgreens breached their implied warranties in that Metabolife 356 was not of merchantable quality, was not fit and safe for human use, and was injurious to Ms. Floro's health and well-being.

61.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of Metabolife 356, Ms. Floro sustained severe and permanent injuries.

## COUNT VI VS. METABOLIFE
### NEGLIGENT MISREPRESENTATION

62.     Ms. Floro incorporates herein the allegations of fact stated in paragraphs 1 through 61 as if set forth in full.

63.     In continuing to sell and distribute Metabolife 356 for use by Ms. Floro while failing to warn Ms. Floro of the dangers of using dietary supplements containing ephedra, after Metabolife learned or should have learned of these dangers, Metabolife negligently

11

misrepresented that Metabolife 356 was fit for use, merchantable, and reasonably safe for its intended purpose.

64.    The representations and omissions of material fact by Metabolife were in fact false.  The true facts, which Metabolife failed to disclose and/or falsified to the public and to the FDA, were that Metabolife 356 could cause severe medical problems to consumers, including Ms. Floro.

65.    When Metabolife made these representations and omissions of material fact, it knew or should have known that the representations were false, that the omissions of material fact were misleading, and that the misrepresentations were made with no reasonable ground for believing them to be true.

66.    The representations and omissions of material fact were made by Metabolife with the intent to deceive the Ms. Floro, the general public, and the FDA, with intent to induce them to use Metabolife 356.

67.    At the time the aforesaid representations and omissions of material fact were made, Metabolife concealed from Ms. Floro, the general public, and the FDA, its lack of adequate testing and research and its lack of information about the safety of Metabolife 356.

68.    At the time these representations and omissions of material fact were made by Metabolife , and at the time Ms. Floro used Metabolife 356, Ms. Floro was reasonably unaware of the falsity of Metabolife's representations, and Ms. Floro reasonably believed that Metabolife 356 was safe as warranted by Metabolife and Walgreens.

69.    Ms. Floro reasonably relied upon such misrepresentations, either directly or indirectly, and was induced to and did use Metabolife 356.

12